# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 19-6795-GW-ASx | Date | July 21, 2020 |
|---|---|---|---|
| Title | *Brian Whitaker v. Starbucks Corporation, et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | None Present | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**PROCEEDINGS:** **IN CHAMBERS - FINAL RULING ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [38] and DEFENDANT STARBUCKS CORPORATION D/B/A STARBUCKS COFFEE COMPANY'S CROSS-MOTION FOR SUMMARY JUDGMENT [42]**

Attached hereto is the Court's Final Ruling. The Court would DENY Plaintiff's Motion for Summary Judgment and GRANT Defendant's Motion for Summary Judgment. Defense counsel is to prepare a proposed judgment consistent with the ruling forthwith.

| | : | |
|---|---|---|
| Initials of Preparer | JG | |

_**Brian Whitaker v. Starbucks Corporation et al**_; Case No. 2:19-cv-06795-GW-(SSx)
Final Ruling on: (1) Plaintiff's Motion for Summary Judgment and (2) Defendant's Motion for
Summary Judgment

## I.    Introduction

Plaintiff Brian Whitaker sues Defendant Starbucks Corporation, a Washington
Corporation, for violations of (1) the Americans with Disabilities Act ("ADA"), 42 U.S.C. §
12101, _et seq._, and (2) the Unruh Civil Rights Act, Cal. Civ. Code § 51-53 at one of its shops in
Beverly Hills, California.  _See generally_ Complaint, Docket No. 1.  The Complaint specifically
made reference to access-related deficiencies as to dining tables and the sales counter.[1]  _Id._ at ¶¶
10-20.

Plaintiff now moves for summary judgment as to the accessibility of the dining tables.  _See_
_generally_ Plaintiff's Motion for Summary Judgment ("Pl. Motion"), Docket No. 38.  Defendant
opposes, _see generally_ Opposition to Plaintiff's Motion for Summary Judgment ("Def. Opp'n"),
Docket No. 41, and Plaintiff replies, _see generally_ Reply in Support of Plaintiff's Motion to
Dismiss ("Pl. Reply"), Docket No. 43.  Defendant also moves for summary judgment.  _See_
_generally_ Defendant's Motion for Summary Judgment ("Def. Motion"), Docket No. 42.  Plaintiff
opposes, _see generally_ Opposition to Defendant's Motion for Summary Judgment ("Pl. Opp'n"),
Docket No. 44, and Defendant replies, _see generally_ Reply in Support of Motion for Summary
Judgment ("Def. Reply"), Docket No. 46.

## II.    Legal Standard

Summary judgment shall be granted when a movant "shows that there is no genuine issue
as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ.
P. 56(a); _see also Miranda v. City of Cornelius_, 429 F.3d 858, 860 n.1 (9th Cir. 2005).  As to
materiality, "[o]nly disputes over facts that might affect the outcome of the suit under the
governing law will properly preclude the entry of summary judgment." _Anderson v. Liberty Lobby,_

---

[1] As to the alleged problem with the sales counter, Plaintiff averred that, while the counter "complies with the ADA
Standards for accessible design," Defendant has a "practice of converting a significant portion of the sales counter to
a display and merchandise area" which limits its access to persons with disabilities.  _See_ Complaint at ¶¶ 17-19.
Defendant filed a motion to dismiss the "sales counter" portion of Plaintiff's lawsuit.  _See_ Docket No. 15.  This Court
granted said motion finding that the placement of displays and merchandise on an otherwise compliant sales counter
did not violate the applicable 2010 ADA Standards for Accessible Design, 28 C.F.R. § 36.406(a)(3).  _See_ 12/2/2019
Order, Docket No. 20.  The Ninth Circuit reached a similar conclusion in regards to the presence of merchandise and
displays on Starbucks' sales counters in _Lindsay v. Starbucks Corp._, No. 19-55738, 2020 WL 3265180 (9th Cir. June
17, 2020); and _Johnson v. Starbucks Corp._, No. 19-15759, 2020 W.L. 3265063 (9th Cir. June 17, 2020).

1

*Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

To satisfy its burden at summary judgment, a moving party without the burden of persuasion "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see also Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (*en banc*); *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).

> If the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact, the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment[, but instead] must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial.

*T.W. Elec. Serv., Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (internal citations and quotation marks omitted). In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence, and views all evidence and draws all inferences in the light most favorable to the non-moving party. *See id.* at 630-31 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)); *see also Hrdlicka v. Reniff*, 631 F.3d 1044 (9th Cir. 2011); *Motley v. Parks*, 432 F.3d 1072, 1075 n.1 (9th Cir. 2005) (*en banc*).

The initial burden is on the moving party to demonstrate an absence of a genuine issue of material fact or to demonstrate that the nonmoving party will be unable to make a sufficient showing on an essential element of its case for which it has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Only if the moving party meets its burden must the non-moving party produce evidence to rebut the moving party's claim and create a genuine issue of material fact. *Id.* at 322-23. If the non-moving party meets this burden, then the motion will be denied. *Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1103.

## III.    Factual Background[2]

---

[2] Some of the underlying "undisputed" facts cited herein have been disputed by Plaintiff or Defendant. The Court has reviewed said disputes and has included in this summary only facts that are supported by the cited evidence, altering the proffered facts if necessary to accurately reflect the uncontroverted evidence. To the extent that the cited

Plaintiff Brian Whitaker suffers from a C-4 spinal cord injury, which substantially limits his ability to walk on his own. *See* Defendant's Response to Plaintiff's Statement of Uncontroverted Facts ("Pl. SUF"), Docket No. 41-1, ¶ 1. Plaintiff uses a wheelchair for mobility. *See id.* Defendant operates the Starbucks located at 257 S. La Cienaga Blvd., Beverly Hills, California (the "Starbucks"). *Id.* ¶¶ 2-4. Plaintiff visited the Starbucks to eat on July 17, 2019. *Id.* ¶ 5. He observed that there were outside dining tables provided by the Starbucks, but the tables did not have enough toe clearance for wheelchair users. *Id.* ¶¶ 6-7. Attempting to sit at such a table would have caused Plaintiff difficulty and discomfort due to the lacking toe clearance. *Id.* ¶ 8. Because Plaintiff did not see any accessible dining tables available for disabled people to use, Plaintiff left the Starbucks without eating. *Id.* ¶ 9. Plaintiff lives near the Starbucks, but he is currently deterred from visiting it because of the condition of the dining tables. *Id.* ¶¶ 12-13. Once the violation is removed, Plaintiff plans to return to patronize the Starbucks. *Id.* ¶ 14.

On July 31, 2019, Evens Louis, an investigator for Plaintiff, conducted an investigation at the Starbucks. *Id.* ¶ 10. Louis found that the toe clearance of the dining tables inside and outside the Starbucks was three inches. *Id.* ¶ 11; *see also* Defendant's Response to Plaintiff's Response to Defendant's Statement of Uncontroverted Facts ("Def. SUF"), Docket No. 46-6, ¶ 2. After July 31, 2019, Defendant began providing at least 5% of indoor seating at the Starbucks with clearance of 28.25 inches in height, 23.028 inches in depth, and 31.5 inches in width. Def. SUF ¶ 4. Defendant also began providing at least 5% of outdoor seating at the Starbucks with clearance of 27.25 inches in height, 23.38 inches in depth, and 31.38 inches in width. *Id.* During the coronavirus pandemic, Defendant removed all outdoor dining tables at the Starbucks, except one table to perform carry-out transactions. *Id.* ¶ 5. Defendant asserts that if it begins providing outdoor tables again, it will provide at least 5% of outdoor seating with toe clearance of more than 9 inches. *Id.* ¶ 6.

**IV.**     <u>**Discussion**</u>

     **A. ADA**

---

underlying "undisputed" facts have been disputed, the Court finds that the stated disputes: (1) fail to controvert the proffered "undisputed" facts, (2) dispute the facts on grounds not germane to the below statements, and/or (3) fail to cite evidence in support of the disputing party's position. As such, the Court treats such facts as undisputed. Any proffered facts not included in this Tentative Ruling were found to be: (1) improper opinions or conclusions rather than facts, (2) were unsupported by admissible evidence, (3) were deemed irrelevant to the Court's present analysis, or (4) some combination thereof. To the extent the Court uses any facts in the Discussion section of this tentative ruling, and does not note that they are disputed, it has determined that they are undisputed.

Title III of the ADA prohibits discrimination against any individual "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182(a).  Discrimination includes a failure to remove architectural barriers in existing facilities where such removal is "readily achievable," 42 U.S.C. § 12182(b)(2)(A)(iv), or a failure to design or construct new facilities or alter portions of existing facilities such that they are "readily accessible and usable by individuals with disabilities," 42 U.S.C. § 12183(a)(l)-(2).  The elements of a Title III discrimination claim are: (1) the plaintiff is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of his disability.  *See Molski v. MJ Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007).  "An ADA plaintiff may challenge architectural barriers related to his disability, even if he did not personally encounter those barriers, provided that he personally encountered at least one barrier at the place of public accommodation." *Perri v. Chivens, Inc.*, Case No. SACV 19-190-NS-(DFMx), 2019 WL 7882558, at *2 (C.D. Cal. Sept. 4, 2019).

The ADA tasks the Architectural and Transportation Barriers Compliance Board, an independent federal agency known as the Access Board, with establishing "minimum guidelines and requirements for the standards issued" under Title III of the ADA. 29 U.S.C. § 792(b)(3)(B). In turn, the United States Department of Justice ("DOJ") is responsible for promulgating "regulations . . . that include standards applicable to facilities" covered by Title III which are "consistent with the minimum guidelines and requirements issued by"' the Access Board.  42 U.S.C. § 12186(b)-(c).  The ADA Accessibility Guidelines ("ADAAG") issued by the Access Board and adopted by the DOJ "lay out the technical structural requirements of places of public accommodation." *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1080-81 (9th Cir. 2004).

The applicable design standards in this case require at least 9 inches of toe clearance under tables.  *See* ADAAG § 306.2.1.  The regulations also require a minimum 17 inches and maximum 25 inches of depth under the element.  *See* ADAAG §§ 306.2.2-3.  Further, the tops of dining tables must be a minimum of 28 inches and a maximum of 34 inches above the ground.  *See* ADAAG § 902.3.

Defendant argues that summary judgment should be granted because it has remedied the

ADA violation by ensuring that its dining tables provide toe clearance of over nine inches, thus mooting Plaintiff's claim. *See* Def. Motion at 6. Further, Defendant has submitted a declaration that it will continue to comply with the toe clearance requirements in the future. *See* Declaration of Neil Bromham ("Bromham Decl."), Docket No. 42-2, ¶ 5. When a party seeks injunctive relief, "'past exposure to illegal conduct does not in itself show a present case or controversy.'" *Civil Rights Educ. and Enforcement Center v. Hospitality Properties Trust*, 867 F.3d 1093, 1098 (9th Cir. 2017) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). "Instead, the plaintiff must allege 'continuing, present adverse effects' stemming from the defendant's actions." *Id.* "A plaintiff experiences continuing adverse effects where a defendant's failure to comply with the ADA deters [him] from making use of the defendant's facility." *Id.* (citing *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 953 (9th Cir. 2011) (en banc)). If the discriminatory conditions continue, and the plaintiff is aware of them and remains deterred, "the injury under the ADA continues." *Id.* (citing *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1137 (9th Cir. 2002)). But "a defendant's voluntary removal of alleged barriers prior to trial can have the effect of mooting a plaintiff's ADA claim." *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 905 (9th Cir. 2011). When a defendant voluntarily modifies his property to remedy an alleged ADA violation, the plaintiff has received the only relief to which he would be entitled if the court were to issue an injunction. *Grove v. De La Cruz*, 407 F. Supp. 2d 1126, 1130 (C.D. Cal. 2005).

Plaintiff argues that Defendant's actions regarding toe clearance are insufficient to render the case moot, because Defendant did not demonstrate that it was in compliance with every ADAAG standard for tables. *See* Pl. Opp'n at 5. Plaintiff points out that the ADAAG standards "dictate that an accessible table has toe clearance, with a maximum and minimum depth[,] proper clear floor space to approach the table, dining surface width and height." *Id.* According to Plaintiff, then, Defendant's assurance that the tables have proper toe clearance does not adequately demonstrate ADA compliance. However, Plaintiff's Motion for Summary Judgment only presented evidence indicating that Plaintiff found insufficient toe clearance at Defendant's dining tables. *See* Declaration of Evens Louis ("Louis Declaration"), Docket No. 38-7, ¶ 4. Nowhere has Plaintiff specified any other issues with the tables' accessibility. In fact, even though Plaintiff points out that the ADAAG standards regulate more than just tables' toe clearance, Plaintiff does not actually argue − or point to any evidence showing − that anything other than the tables' toe clearance violated the ADAAG standards. *See* Pl. Opp'n at 5; Pl. Reply at 3-4. It would be

unreasonable to require Defendant to preemptively prove compliance with issues that Plaintiff did not even present. Pointing out that there are additional ADAAG standards for dining tables does not create a dispute of material fact regarding Defendant's tables. Plaintiff cannot engage in a game of whack-a-mole with the ADAAG standards to avoid summary judgment.[3] The evidence shows that Defendant has remedied the alleged ADA violation, and Defendant has pledged to provide accessible tables in the future. Therefore, Plaintiff's ADA claim is moot.[4]

## B. Unruh Act

The Unruh Act provides: "All persons within the jurisdiction of [California] are free and equal, and no matter what their . . . disability . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b). The Unruh Act also provides that a violation of the ADA constitutes a violation of § 51 of the Unruh Act. Cal. Civ. Code § 51(f). Unlike the ADA, the Unruh Act allows for recovery of monetary damages. A plaintiff may recover actual damages for each and every offense "up to a maximum of three times the amount of actual damages but in no case less than four thousand dollars ($4,000)." Cal. Civ. Code § 52(a). "The litigant need not prove she suffered actual damages to recover the independent statutory damages of $4,000." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 731 (9th Cir. 2007). Here, according to the Complaint, Plaintiff seeks a minimum of $4,000 in statutory damages under the Unruh Act for each offense. *See* Prayer in the Complaint.

### 1. California's Limitations on the Filing of Construction-Related Accessibility Claims

"In 2012, in an attempt to deter baseless claims and vexatious litigation, California adopted heightened pleading requirements for disability discrimination lawsuits under the Unruh Act."

---

[3] Further, even if Plaintiff had pointed to problems with the tables other than the toe clearance, Defendant has submitted a declaration stating that at least 5% of the indoor tables at the Starbucks have clearance of 28.25 inches in height, 23.028 inches in depth, and 31.4 inches in width, *see* Supplemental Declaration of Neil Bromham ("Supp. Bromham Decl."), Docket No. 46-1, ¶ 3, and that at least 5% of the outdoor tables at the Starbucks have clearance of 27.25 inches in height, 23.38 inches in depth, and 31.38 inches in width, *see* Supp. Bromham Decl. ¶ 4.

[4] Defendant began providing compliant seating after July 31, 2019. See Def. SUF ¶ 4. Defendant has removed all outdoor tables during the COVID-19 pandemic, but it pledges that if it provides outdoor tables again in the future, it will ensure that they are compliant. *See* Def. SUF ¶ 5. Plaintiff contends that this declaration of future compliance is insufficient to render Plaintiff's claim moot. Plaintiff's out-of-circuit citations do not persuade the Court that Plaintiff's claim is not moot. Defendant has voluntarily remedied the alleged ADA violation, and there is no reason to conclude that Defendant will return to using noncompliant tables. As such, Plaintiff has received the remedy to which he was entitled, and the case is rendered moot.

*Velez v. Il Fornaio (America) Corp.*, CV 3:18-1840 CAB (MDD), 2018 WL 6446169, at \*6 (S.D. Cal. Dec. 10, 2018).   These heightened pleading requirements apply to actions alleging a "construction-related accessibility claim," which California law defines as "any civil claim in a civil action with respect to a place of public accommodation, including but not limited to, a claim brought under Section 51, 54, 54.1, or 55, based wholly or in part on an alleged violation of any construction-related accessibility standard." Cal. Civ. Code § 55.52(a)(1).  California's heightened pleading standard for construction-related accessibility claims require a plaintiff to include specific facts concerning the plaintiff's claim, including the specific barriers encountered or how the plaintiff was deterred and each date on which the plaintiff encountered each barrier or was deterred. *See* Cal. Civ. Proc. Code § 425.50(a).  California law requires plaintiffs to verify their complaints alleging construction-related accessibility claims.  *See* Cal. Civ. Proc. Code § 425.50(b)(1).  A complaint alleging construction-related accessibility claims that is not verified is subject to a motion to strike.  *Id*.

When California continued to experience large numbers of these actions, California imposed additional limitations on "high-frequency litigants."  These additional restrictions became effective on October 15, 2015.  Under California law, a "high-frequency litigant" is defined as:

> A plaintiff who has filed 10 or more complaints alleging a construction-related accessibility violation within the 12-month period immediately preceding the filing of the current complaint alleging a construction-related accessibility violation.

Cal. Civ. Proc. Code § 425.55(b)(1).  The definition of high-frequency litigant also extends to attorneys.  *See* Cal. Civ. Proc. Code § 425.55(b)(2).  In support of its imposition of additional requirements on high-frequency litigants, the California Legislature found and declared:

> According to information from the California Commission on Disability Access, more than one-half, or 54 percent, of all construction-related accessibility complaints filed between 2012 and 2014 were filed by two law firms.  Forty-six percent of all complaints were filed by a total of 14 parties.  Therefore, a very small number of plaintiffs have filed a disproportionately large number of the construction-related accessibility claims in the state, from 70 to 300 lawsuits each year.  Moreover, these lawsuits are frequently filed against small businesses on the basis of boilerplate complaints, apparently seeking quick cash settlements rather than correction of the accessibility violation.  This practice unfairly taints the reputation of other innocent disabled consumers who are merely trying to go about their daily lives accessing public accommodations as they are entitled to have full and equal access under the state's Unruh Civil Rights Act (Section 51 of the Civil Code) and the federal Americans with Disability Act of 1990 (Public Law 101-336).

Cal. Civ. Proc. Code § 425.55(a)(2).  In response to these "special and unique circumstances," Cal. Civ. Proc. Code § 425.55(3), California imposed a "high-frequency litigant fee" requiring high-frequency litigants to pay a $1,000 filing fee at the time of the filing of the initial complaint in addition to the standard filing fees.  Cal. Gov't Code § 70616.5.  California law also requires complaints filed by high-frequency litigants to allege certain additional facts, including whether the action is filed by, or on behalf of, a high-frequency litigant, the number of construction-related accessibility claims filed by the high-frequency litigant in the preceding 12 months, the high-frequency litigant plaintiff's reason for being in the geographic area of the defendant's business, and the reason why the high-frequency litigant plaintiff desired to access the defendant's business. *See* Cal. Civ. Proc. Code § 425.50(a)(4)(A).

The Court takes judicial notice of the docket for the U.S. District Court for the Central District of California as per its CM/ECF system which indicates that Plaintiff has filed several hundred combined ADA/Unruh Act cases in the prior 12 months.[5]  Needless to say, Plaintiff is indisputably an Unruh Act "high-frequency litigant" in the state of California.

## 2.  Supplemental Jurisdiction Standard

In an action over which a district court possesses original jurisdiction, that court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  Even if supplemental jurisdiction exists, district courts have discretion to decline to exercise supplemental jurisdiction:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if –
>> (1) the claim raises a novel or complex issue of State law,
>> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  The Supreme Court has described 28 U.S.C. § 1367(c) as a "codification" of the principles of "'economy, convenience, fairness, and comity'" that underlie the Supreme

---

[5] Pursuant to Fed. R. Evid. 201(b), a court can take judicial notice on its own as to facts which "can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned" such as filings on court dockets. *See Porter v. Ollison*, 620 F.3d 952, 955 n.1 (9th Cir. 2010).

Court's earlier jurisprudence concerning pendent jurisdiction. *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172-73, 118 S. Ct. 523, 533, 139 L. Ed. 2d 525 (1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357, 108 S. Ct. 614, 623, 98 L. Ed. 2d 720 (1988)); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S. Ct. 1130, 1139, 16 L. Ed. 2d 218 (1966) ("It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right.  Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them.  Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.").

District courts may decline to exercise jurisdiction over supplemental state law claims "[d]epending on a host of factors" including "the circumstances of the particular case, that nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims." *City of Chicago*, 522 U.S. at 173, 118 S. Ct. at 534, 139 L. Ed. 2d 525. The supplemental jurisdiction statute "reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" *Id*. (quoting *Cohill*, 484 U.S. at 350, 108 S. Ct. at 619, 98 L. Ed. 2d 720).

The Ninth Circuit does not require an "explanation for a district court's reasons [for declining supplemental jurisdiction] when the district court acts under" 28 U.S.C. §§ 1367(c)(1)-(3), *San Pedro Hotel Co. v. City of Los Angeles*, 159 F.3d 470, 478 (9th Cir. 1998), but does require a district court to "articulate why the circumstances of the case are exceptional in addition to inquiring whether the balance of the *Gibbs* values provide compelling reasons for declining jurisdiction in such circumstances." *Executive Software N. Am. Inc. v. U.S. Dist. Court for the Cent. Dist. of Cal.*, 24 F.3d 1545, 1558 (9th Cir. 1994).  According to the Ninth Circuit, this "inquiry is not particularly burdensome."  *Id*.  When declining to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(4), "the court must identify the predicate that triggers the applicability of the category (the exceptional circumstances), and then determine whether, in its judgment, the underlying *Gibbs* values are best served by declining jurisdiction in the particular case (the compelling reasons)." *Id*.

**3.  The Court Declines to Exercise Supplemental Jurisdiction Over Plaintiff's Unruh**

9

**Act Claim**

Because California's heightened pleading standards and increased filing fees do not apply in federal court, high-frequency litigants (such as Plaintiff herein) can engage in forum-shopping to circumvent the restrictions that California has imposed on Unruh Act claims alleging construction-related accessibility claims simply by relying on § 1367(a)'s grant of supplemental jurisdiction to file their Unruh Act claims in federal court, when they combine an Unruh Act monetary claim with an ADA claim for injunctive relief.  The number of construction-related accessibility claims filed in the Central District has skyrocketed both numerically and as a percentage of total civil filings since California began its efforts to curtail the filing of such actions. According to statistics compiled by the Clerk's Office, in 2013, the first year in which California's initial limitations on such cases were in effect, there were 419 ADA cases filed in the Central District, which constituted 3% of the civil actions filed.  Filings of such cases increased from 928 (7% of civil cases) in 2014, the year before the imposition of the additional $1,000 filing fee and additional pleading requirements for high-frequency litigants, to 1,386 (10% of civil cases) in 2016, the first full year of those requirements.  The number and percentage of such cases filed in the Central District has increased in each year since California acted to limit the filings by high-frequency litigants, reaching 1,670 (12% of civil cases) in 2017; 1,670 (18% of civil cases) in 2018; 3,595 cases (24% of civil cases) in 2019; and 2,149 cases (27% of civil cases) in the first six months of 2020.

By enacting restrictions on the filing of construction-related accessibility claims, California has expressed a desire to limit the financial burdens California's businesses may face for claims for statutory damages under the Unruh Act.  By filing these actions in federal court, Plaintiff has evaded these limits and sought a forum in which Plaintiff can claim these state law damages in a manner inconsistent with the state law's requirements.  This situation, and the burden the ever-increasing number of such cases poses to the federal courts, presents "exceptional circumstances" and "compelling reasons" that justify the Court's discretion to decline to exercise supplemental jurisdiction over Plaintiff's Unruh Act claim in this action under 28 U.S.C. § 1367(c)(4).

Declining to exercise supplemental jurisdiction over Plaintiff's Unruh Act claim in these circumstances supports the values of judicial economy, convenience, fairness, and comity:

> As a high-frequency litigant, the Court finds it would be improper to allow Plaintiff
> to use federal court as an end-around to California's pleading requirements.
> Therefore, as a matter of comity, and in deference to California's substantial

interest in discouraging unverified disability discrimination claims, the Court declines supplemental jurisdiction over Plaintiff's Unruh Act claim.

*Schutza v. Cuddeback*, 262 F. Supp. 3d 1025, 1031 (S.D. Cal. 2017); *see also Gibbs*, 383 U.S. at 726, 86 S. Ct. at 1139, 16 L. Ed. 2d 218.  Although some plaintiffs and their counsel have argued that they file in federal court not to evade California's restrictions, but because of the quality of the judges, the ease of the ECF system for filing, and the prevalence of federal ADA decisional authority, the Court finds that such arguments are unpersuasive and belied by the recent nature of the dramatic increase in the filing of such cases in federal court.  Indeed, those reasons, if true at all, do not explain why nearly 9 times more construction-related accessibility actions are being filed in the Central District in 2019 than were filed in 2013.  As one district court recently explained:

> In attempting to show that his decision to file in federal court is not simply an attempt to evade California's heightened pleading rules, Schutza insists the 'quality of judges [and] the quality of legal rulings' is higher in federal court.  This argument, of course, flies in the face of our judicial system's equal respect for state and federal courts.  The convenience of electronic filing and the widespread availability of published opinions—other arguments Schutza advances—may be creature comforts that make filing in federal court more enticing, but they hardly outweigh the disservice that is done to California's efforts to implement and interpret its own law when federal courts exercise supplemental jurisdiction over these claims.  If Schutza were able to articulate a persuasive reason for his decision to file in federal court, perhaps this would be a different story.  As it stands, though, the Court can discern no basis for the state law claim being filed in federal court other than to prevent California from being able to apply and enforce its own rules.

*Schutza v. Alessio Leasing, Inc.*, CV 18-2154 LAB (AGS), 2019 WL 1546950, at *3 (S.D. Cal. Apr. 8, 2019); *see also Schutza*, 262 F. Supp. 3d at 1031 ("It is unclear what advantage – other than avoiding state-imposed pleading requirements – Plaintiff gains by being in federal court since his sole remedy under the ADA is injunctive relief, which is also available under the Unruh Act.").  "Federal courts may properly take measures to discourage forum-shopping, and here, where Plaintiff has filed over one hundred disability discrimination cases, and settled more than fifty of them in a two-year period, the Court finds this to be a compelling reason to decline supplemental jurisdiction."  *Schutza*, 262 F. Supp. 3d at 1031 (citing *Hanna v. Plumer*, 380 U.S. 460, 467-68, 85 S. Ct. 1136, 1142, 14 L. Ed. 2d 8 (1965)).

Furthermore, irrespective of the purported good-faith of the high-frequency litigants in choosing to bring their Unruh Act claims in federal court, the ultimate effect of that ploy is to negate the protections which the California legislature deemed necessary to avoid the Act's

appearing to devolve into a shakedown scheme by unscrupulous persons targeting small businesses.  Given that the California legislature has specifically crafted special provisions for targeting that "limited group of plaintiffs" (*see* Cal. Civ. Proc. Code § 425.55(a)(3)), the federal courts should not participate in their circumvention.

The Court therefore concludes that "exceptional circumstances" and "compelling reasons" support the Court's decision to decline to exercise supplemental jurisdiction over Plaintiff's Unruh Act claim under 28 U.S.C. § 1367(c)(4).  The Court further concludes that Plaintiff's Unruh Act claim substantially predominates over the ADA claim for purposes of 28 U.S.C. § 1367(c)(2).  *See id*. at 1030 ("[Plaintiff's] nine allegations, if proven, would entitle Plaintiff to a minimum monetary award of $36,000.  In contrast, under the ADA, Plaintiff would only be entitled to injunctive relief."); *see also Reyes v. Flourshings Plus, Inc.*, CV 19-261 JM (EVG), 2019 WL 1958284, at *2 (S.D. Cal. May 2, 2019) ("The monetary damages Plaintiff seeks under the Unruh Act, [Disabled Persons Act], and California common law substantially predominate over his request for injunctive relief under the ADA."); *id*. at *3 ("Plaintiff's prior litigation of lawsuits in this district further supports that he primarily seeks monetary rather than injunctive relief.  Most often, [Plaintiff] settles and/or voluntarily dismisses his cases with prejudice before or shortly after an answer is filed.").

Exercising the Court's discretion to decline supplemental jurisdiction does not deprive Plaintiff of any remedies.  Nor does it allow an ADA claim for injunctive relief to go unaddressed.  Whatever inefficiencies – which are created by the Court's decision to decline to exercise supplemental jurisdiction – are problems created by Plaintiff's filing of this action in federal court rather than in a state court:

> [T]here is no relief available to [plaintiff] in federal court that could not be secured in state court.  Had he brought this suit in state court, there would have been only one suit pending and he would have been eligible to receive every form of relief he seeks: an injunction, money damages, and attorney's fees.  By being "inefficient" and declining to exercise supplemental jurisdiction over his state claim, this Court is simply recognizing that California has a strong interest in interpreting and enforcing its own rules without federal courts serving as a convenient end-around for creative litigants.  If that results in occasional inefficiency, it's a worthwhile tradeoff.

*Alessio Leasing*, 2019 WL 1546950, at *4.  By declining to exercise supplemental jurisdiction, the Court is: (1) merely restoring the balance Congress struck when it enacted the ADA and provided a private right of action for injunctive relief and an award of attorneys' fees, but did not allow for

the recovery of statutory damages; and (2) honoring the efforts of the California legislature in attempting to curb the abuses of the Unruh Act by high-frequency litigants.

For the reasons stated above, the Court, in its discretion, **declines** to exercise supplemental jurisdiction over Plaintiff's Unruh Act claim.

## V.    <u>Conclusion</u>

Based on the foregoing discussion, the Court would **DENY** Plaintiff's Motion for Summary Judgment and **GRANT** Defendant's Motion for Summary Judgment.